278 N.J. Super. 31 (1994)
650 A.2d 366
ARTHUR KRUPP, PETITIONER-RESPONDENT,
v.
BOARD OF EDUCATION OF THE UNION COUNTY REGIONAL HIGH SCHOOL DISTRICT # 1, UNION COUNTY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1994.
Decided December 6, 1994.
*33 Before Judges PETRELLA, HAVEY and CUFF.
Nathanya G. Simon argued the cause for appellant Board of Education of the Union County Regional High School District # 1 (Schwartz Simon Edelstein Celso and Kessler, attorneys; Lawrence S. Schwartz, of counsel; Nathanya G. Simon and Thomas Russo, on the brief).
Thomas F. Dwyer argued the cause for respondent Arthur Krupp (Dwyer & Canellis, attorneys; Barbara A. Canellis, on the brief).
*34 The State Board of Education filed a Statement in lieu of Brief. Deborah Poritz, Attorney General of the State of New Jersey, (Nancy Kalpen, Deputy Attorney General, on the Statement).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This is an appeal by the Board of Education of the Union County Regional High School District # 1 (Board) from a decision by the State Board of Education (State Board). The State Board upheld the decision of the Commissioner of Education (Commissioner) that Arthur Krupp should have been appointed girls' basketball coach at Johnson Regional High School for the 1990-1991 school year.
On its appeal the Board argues: (1) local boards of education have full discretion over the appointment of coaches and, in the matter sub judice, the Board exercised sound educational judgment in denying Krupp the coaching appointment; (2) contrary to the holdings below, denial of the coaching appointment to Krupp did not violate N.J.A.C. 6:29-3.3, as he did not satisfy the appointment qualifications; (3) Krupp's voluntary resignation from a similar coaching position in the district constituted a waiver of any rights otherwise held to the sought-after position; (4) N.J.A.C. 6:29-3.3 unlawfully deprives local boards of education of statutory authority in matters of school district management and personnel (not raised below); and (5) the award of monetary damages was improper because Krupp failed to adequately mitigate damages.
Krupp filed a petition with the Commissioner contending that the Board violated N.J.A.C. 6:29-3.3 when it did not appoint him to an available coaching position that he sought within the district. Although the Commissioner initially dismissed Krupp's petition as untimely, the State Board overruled the Commissioner and found sufficient cause existed to relax the limitations period. The Commissioner then transmitted the case to the Office of Administrative Law (OAL) for a hearing.
*35 An Administrative Law Judge (ALJ) found after a hearing that: (1) the Board violated N.J.A.C. 6:29-3.3 when it hired a qualified, certified extra-district teacher to the coaching position within the district; and (2) Krupp was entitled to compensatory damages of $4,550, the amount paid to the extra-district coach hired for that season. The Commissioner adopted the ALJ's findings and conclusions, and the State Board affirmed the Commissioner's decision.
At the time relevant to the dispute, four high schools were administered by the Board in the district, which included the municipalities of Berkeley Heights, Mountainside, Garwood, Kenilworth, Clark, and Springfield. Only three high schools remain open, Jonathan Dayton (Dayton) in Springfield, Arthur L. Johnson (Johnson) in Clark, and Governor Livingston in Berkeley Heights. Krupp is a tenured teacher and has been assigned to Dayton since approximately 1965.
Varsity girls' basketball is an interscholastic athletic program offered at both Dayton and Johnson. Krupp was the head coach for girls' basketball at Dayton for several school years through the 1989-90 winter athletic season.
For the 1990-91 athletic season the position of head basketball coach at Johnson was open and a notice was posted to this effect on February 9, 1990. On February 13, 1990, Krupp gave the athletic director at Dayton a brief, hand-written notice stating that he did not want to be reappointed as Dayton's head coach for the 1990-91 season. Krupp indicated that he voluntarily relinquished reappointment because, in part, he had become tired of coaching three high school athletic programs. This was subsequently noted in the yearly coaching evaluation report completed by Dayton's athletic director and Dayton's principal. Krupp signed the report.
Nonetheless, sometime shortly after February 20, 1990, Krupp told the athletic director at Johnson that he wanted to coach girls' basketball at Johnson for the 1990-91 season. Krupp pursued his interest in the head girls' basketball coach position at Johnson and believed he would be appointed to it because neither the Board *36 nor Johnson's athletic director had informed him that he would not be appointed.
On September 16, 1990, the Board advertised for a head girls' basketball coach. Kathy Hodic, an extra-district qualified, certified teacher, who had served as assistant girls' basketball coach at Dayton during the 1989-90 season, applied for the head coach position at Dayton for the 1990-91 season. Krupp and Walter Hennessy, an extra-district, certified teacher applied for the head girls' basketball coach position at Johnson for the 1990-91 season.
In late October 1990, Krupp learned that the Board was not going to appoint him to the coaching position at Johnson. It was then too late for him to apply for other coaching positions for that season in any nearby school district.
Hodic was appointed to the vacant coaching position at Dayton. The Board appointed Hennessy to the head girls' coach position at Johnson for the 1990-91 season at a stipend of $4,550. Both were outside the district appointments.
During the 1991-92 school year, Krupp served as head girls' basketball coach in Sayreville. As such his appointment was from outside that district. The stipend he received there was $900 less than Krupp would have received for that season had he held the same position in the district. During the 1992-93 season Krupp returned to Dayton to serve as the head coach of the girls' basketball team.
Krupp testified before the ALJ that he left the position at Dayton because he was frustrated and pressured after having coached three high school sports for many years. Thus, he told Dayton's athletic director that he did not want to be reappointed head girls' basketball coach for the following season and submitted a written statement to that effect.
The Board presented testimony through its assistant superintendent of schools that its "policy" was a preference that an intra-district school seeking coaches hire teachers who were employed at the school because the coaches would be more accessible and *37 accountable to the students, school administration, parents, and guidance staff.[1] It was noted that State law (presumably the regulation, N.J.A.C. 6:29-3.3) now permitted school districts to seek extra-district coaches because many districts could not staff the amount of coaching positions required.
According to the Board's witness, Krupp was not selected for the position at Johnson because: (1) his reasons for making the coaching change were not educationally sound; and (2) his departure for a rival school within the district would have had a deleterious effect upon the Dayton student body. He also considered that Krupp had presented the school administration with an ultimatum that he would coach at Johnson or nowhere else within the district. The witness further testified that work assignments were the exclusive prerogative of management and could not be dictated by employees. He conceded that Krupp was qualified to teach and coach at Johnson and that the Board's intra-school hiring preference was not an official, written policy. He acknowledged, moreover, that some schools in Union County District # 1 hired coaches who taught at other intra-district schools.
The current principal at Johnson testified that Krupp had first contacted that school regarding its head girls' basketball coach position in late winter of 1990. He recalled that Krupp said he had "resigned" his position at Dayton. The principal and his staff believed that hiring Krupp would not be in the best interests of the district. Because no other qualified intra-district candidates had applied, Johnson advertised the position in a newspaper.
A reviewing court does not vacate an administrative agency decision unless it is arbitrary, capricious, without support in the record, or contravenes the legislative policy behind the authorization of the regulation. Campbell v. Civil Serv. Dep't, 39 N.J. 556, 562, 189 A.2d 712 (1963); Dore v. Bedminster, 185 N.J. Super. 447, 453, 449 A.2d 547 (App.Div. 1982). Generally, we *38 accord deference to an agency's construction of a regulation it is charged with enforcing. See In re Academy Bus Tours, Inc. v. New Jersey Transit Corp., 263 N.J. Super. 353, 365-366, 622 A.2d 1335 (App.Div. 1993) (interpretation of regulation permitting New Jersey Transit to contract shuttle-bus services upheld); Allen v. Board of Trustees, Police & Fireman's Retirement Sys., 233 N.J. Super. 197, 207, 558 A.2d 496 (App.Div. 1989) (agency's interpretation of a rule upheld based on the agency's purpose in promulgating the rule). But we are not bound by the agency interpretation. Waterfront Commission of N.Y. Harbor v. Mercedes-Benz of No. America, Inc., 99 N.J. 402, 415, 493 A.2d 504 (1985); Fedders Financial Corp. v. Div. of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984); In re Petition of Adamar, 222 N.J. Super. 464, 469, 537 A.2d 704 (App.Div. 1988).
An administrative agency, in construing its regulations, must apply the same rules of construction as those guiding statutory construction by the courts. In re N.J.A.C. 14A:20-1.1, 216 N.J. Super. 297, 306-307, 523 A.2d 686 (App.Div. 1987) (applying principal of statutory construction that the court should attempt to harmonize regulations within the same area of law). The polestar of statutory and regulatory construction is the intent of the body which created the statute or regulation. Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993).
The regulation at issue, N.J.A.C. 6:29-3.3, as in effect from 1983 to date,[2] provides in pertinent part:
(a) Any person not certified as a teacher and not in the employ of a district board of education shall not be permitted to organize public school pupils during school time ... [for] coaching or for conducting games, events, and contests in physical education or athletics.
(b) School districts shall be permitted to employ any holder of a New Jersey teaching certificate to work in the interscholastic athletic program provided the position has been advertised.

*39 (c) In the event there is no qualified and certified applicant, the holder of a county substitute certificate is authorized to serve as an athletic coach in the district in which he or she is employed... provided that:
1. The district chief school superintendent demonstrates to the county superintendent that:
i. The vacant coaching position had been advertised; and
ii. There was no qualified applicant based on the written standards of the board of education.
[N.J.A.C. 6:29-3.3 (emphasis added)].
Various school law decisions before and after 1983 have indicated that the thrust of the regulation permits broad interscholastic athletic programs because it enables schools to hire extra-district teachers to coach sports beyond the experience of in-district teachers. The regulation also prohibits school districts from hiring professional athletes who are not also employed as certified teachers. See, e.g., Chambers v. Neptune Tp. Bd. of Educ., 1985 S.L.D. 1363, 1373, 1382 (in post-amendment decision ALJ said that the 1983 amendment did not change paragraph (a) of N.J.A.C. 6:29-3.3, but omitted reference to the change in (b); Commissioner accepted that despite omission); Barber v. Kearny Bd. of Educ., 1975 S.L.D. 58, 62 (pre-amendment decision). Notwithstanding the present language of the regulation, the Commissioner in Chambers repeated the language used by the ALJ and then said that:
[T]he term "employment" as it is used in N.J.A.C. 6:29-3.3(a) correctly ... [e]stablishes that the coaching position must first be offered to one already employed in the district as a teacher. If no such candidate is available, then, under the provisions of N.J.A.C. 6:29-3.3(b), the board may hire a person with a teaching certificate who may or may not be a regular employee of the district.
[Chambers, supra, 1985 S.L.D. at 1382].
See Capraro v. Woodbridge Tp. Bd. of Educ., 1991 S.L.D. 1632 (same); Norcross v. Board of Educ. of Hunterdon Regional High Sch. Dist., 1991 S.L.D. 1154, 1173-1174 (same).
However, a plain reading of the regulation requires us to conclude that the Commissioner's and the Board's interpretation of N.J.A.C. 6:29-3.3 is erroneous as a matter of law. The language of the regulation is not ambiguous. Hence, resort to rules of construction is not warranted. N.J.A.C. 6:29-3.3(a) and (b) on their face clearly allow local school boards to hire intra- or extra-district *40 qualified, certified teachers, provided the coaching position is first advertised. No preference for intra-district employees appears any place in the regulations, and there is no basis for reading such a preference into the regulation.[3]
Our examination of the regulatory history of N.J.A.C. 6:29-3.3 buttresses our conclusion.[4] Indeed, the 1983 amendment lends *41 great weight to a conclusion diametrically opposed to that reached by the State Board in this case. Until November 7, 1983, N.J.A.C. 6:29-3.3(b) provided that:
Every person appointed subsequent to June 1, 1960, to coach, teach or train individual pupils or school teams for inter-school athletic competition shall be a certified member of a school faculty in that school district and shall be employed full-time during the regular day when classes are in session.

[15 N.J.R. 1152(b), 1153 (July 18, 1983)].
This language was deleted and replaced with the language in subsection (b), quoted supra (at pp. 38-39, 650 A.2d at p. 370), which contains no intra-district hiring preference. Generally, the deletion of a specific requirement and substitution of broader language is considered a clear indication of intent to eliminate the excised restriction.[5] Moreover, the clear contrast with the language *42 of N.J.A.C. 6:29-3.3(c), as well as the pre-1983 language in subsection (b), indicates that a distinction can be clearly made when so intended.
Subsection (a) of N.J.A.C. 6:29-3.3 as amended, requires that all athletic coaches be: (1) certified teachers; and (2) employed by a school district in New Jersey. Subsection (a) of N.J.A.C. 6:29-3.3 does not state that coaches must be certified teachers employed by "the" school district in which they are employed. Use of the article "a" in this case, therefore, is akin to using the word "any." Under this "reasonable reading," the employment of Hennessy by the Johnson School was authorized in subsection (a) and the employment of Krupp was not mandated by that section.
Subsection (a) of necessity must be read in context with subsection (b). As noted, after the 1983 amendment, subsection (b) permits districts to "employ any holder of a New Jersey teaching certificate," provided that the local board has advertised the vacant position. See N.J.A.C. 6:29-3.3(b), supra.
In summary, as contrasted with the pre-1983 version of the regulation, the regulation in effect during the applicable time frame here cannot properly be read to impose any intra-district hiring requirement or preference. It only requires a local board to advertise coaching positions before accepting any applications from certified teachers. See N.J.A.C. 6:29-3.3(b). In our view, the State Board's interpretation of the regulation after the 1983 amendment relies upon a strained construction of the word "employment." Perhaps this is due more to over-reliance on pre-1983 school board case decisions before the state agencies and the language therein without actually considering the impact of the *43 1983 amendment and the actual language of the amended regulation. Such a construction of the regulation as given by the State Board here would effectively reimpose terms the State Board eliminated in 1983 without following the requirements of the Administrative Procedure Act. See N.J.S.A. 52:14B-1 et seq.
Accordingly, we are constrained to reverse the decision of the Board and remand the matter to it for reconsideration in light of this decision. Because of their special expertise, however, it is for the Commissioner and the State Board, in the first instance, to consider the Board's argument that the Board exercised sound educational judgment in denying Krupp the coaching appointment for the year at issue, and Krupp's argument to the contrary.
In light of our conclusion we need not address the Board's remaining arguments at length. We have considered all of them and conclude they are without merit. R. 2:11-3(e)(1)(E). We merely add that the record does not support the Board's contention that Krupp did not satisfy the qualifications or standards[6] for appointment.
The decision of the State Board is reversed and we remand to the State Board for a determination on the merits not inconsistent with the construction of the regulation set forth herein.
NOTES
[1] This policy was not set forth in any document and the record does not indicate that it was disseminated within the district.
[2] 1983 has significance because of an amendment to the regulation adopted October 5, 1983, effective November 7, 1983. See 15 N.J.R. 1860(c).
[3] Only subsection (c), as amended, imposes a mandatory hiring preference for coaching personnel where no qualified and certified applicant is available. It permits local boards to hire county certified substitute teachers only if "no qualified and certified applicant" (not "intra-district applicant") exists. (Emphasis added).

Before 1983, subsection (c) allowed extra-district certified teachers to be employed after local boards demonstrated to the county superintendent that: an emergency situation existed; the position was properly advertised; the district in which the teacher was employed agreed to the extra-district employment; and the county superintendent ultimately approved of the extra-district employment. 15 N.J.R. at 1154; see also Chambers, supra, 1985 S.L.D. at 1372. As it now reads, subsection (c) deals only with holders of county substitute certificates. It is not applicable in this matter because Hennessy was a qualified, certified teacher-applicant, not a substitute teacher applicant.
[4] The summary of the agency proposal in the New Jersey Register of July 18, 1983 (15 N.J.R. 1152(b)), stated:

Summary
This proposal amends the process for hiring athletic personnel to coach interscholastic athletics.
Under the existing rules, districts must advertise and screen for potential coaches in a series of steps to be able to hire ultimately someone from outside the district. The proposed amendments would eliminate the successive steps and permit districts to advertise once, as widely as possible, and screen all of the applicants at once. This process would reduce the delays that presently exist between the time when a vacancy occurs and is ultimately filled.
In addition, if, after advertising, the district is still unable to secure the services of a certified person, a person possessing a county substitute certificate could be hired if all of the applicable conditions in Title 6 of the New Jersey Administrative Code had been met.
The amendments do not alter the intent of the existing rules to require, whenever possible, the use of certified teachers as athletic personnel. Instead, they permit a district to search with minimal delays beyond its boundaries for the best qualified certified person. Under the present process there have been instances where the step-by-step process delayed locating a coach until the season was almost over.
Social Impact
Declining enrollments, reduced staff, expanded athletic programs and the economy have all contributed to a shortage of athletic coaches within many districts throughout the State. While districts would prefer to have a certified teacher from their own staff coach an athletic activity, sometimes this is not possible.
* * * * * * * *
Economic Impact
The amendments will have no direct or indirect economic impact on either the State or local school districts. The proposal amends the process of obtaining a coach and does not alter the fact that coaches will be hired, whether from within or outside the school district.
In addition the agency response to two letters of comments at the time the amendments were adopted without changes supports the conclusion that intra-district preferences would no longer be mandated. See 15 N.J.R. 1860(c), November 7, 1983.
[5] See Waterfront Commission of N.Y. Harbor v. Mercedes-Benz of No. America, Inc., 99 N.J. 402, 413, 493 A.2d 504 (1985) (expanded definition of "longshoreman" where 1969 amendments deleted more specific statutory language); Cold Indian Springs Corp. v. Ocean Tp., 154 N.J. Super. 75, 95, 380 A.2d 1178 (Law Div.) ("A change in language in a statute ordinarily implies a purposeful alteration in substance."), aff'd, 161 N.J. Super. 586, 592, 392 A.2d 175 (App.Div. 1978), aff'd 81 N.J. 502, 410 A.2d 652 (1980) (upholding statute excluding from calculations for reductions in property tax those reductions resulting from appeals to the Director of Tax Appeals or county boards of taxation); Essex County Retail Liquor Stores Ass'n v. Municipal Bd. of Alcoholic Beverage Control of City of Newark, 77 N.J. Super. 70, 78, 185 A.2d 404 (App.Div. 1962) (applying a broad construction of ordinance which did not contain the word "only" at the time the dispute arose, even though the ordinance was subsequently amended to include that word, a term of limitation). See also 1A Sutherland, Statutory Construction (5th ed. 1993) §§ 22.29 and 22.30.
[6] Where subsection (c)1(ii) of N.J.A.C. 6:29-3.3 applies, "written standards" seem to be contemplated. However, it is not clear that this is so under subsection (a) and (b).