762 A.2d 1070

# IN THE MATTER OF MARIE BENNETT, DEPARTMENT OF HUMAN SERVICES.

Superior Court of New Jersey
Appellate Division

Submitted November 15, 2000—Decided December 19, 2000.

Before Judges BAIME and LINTNER.

*Trapasso, Dolan & Hollander*, attorneys for appellant (*William E. Hinkes*, on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*Michael J. Haas*, Assistant Attorney General, of counsel; *Elizabeth M. Laufer*, Deputy Attorney General, on the brief)

The opinion of the court was delivered by

BAIME, P.J.A.D.

A civil service regulation allows sick leave benefits for psychological illness caused by a specific work-related accident or occurrence. At issue is whether a worker who suffers post-traumatic stress syndrome resulting from a pervasive and continuous course of sexual harassment may obtain benefits under the regulation. The Merit System Board construed the regulation as authorizing sick leave only where the worker's psychological illness is caused by a single work-related incident. We disagree and reverse.

## I.

The facts are not in dispute. Appellant is employed by the Department of Human Services. Over a seven year period, appellant was the subject of intense and pervasive sexual harassment by her supervisor. We need not describe the specific acts committed. Suffice it to say, the supervisor's misconduct can fairly be characterized as repetitive, systematic and cumulative. The supervisor was disciplined following a departmental investigation and hearing. The uncontradicted medical evidence before the Board was that appellant suffers from "severe post-traumatic stress disorder" as a result of the "hostile work environment created by [her former supervisor]." Her symptoms, which are both psychological and physical, have escalated, rather than abated, over time. Appellant sought paid sick leave to allow her to heal from the mistreatment she received.

The Board accepted as true the medical evidence presented with respect to the severity of appellant's illness. The Board also concluded that appellant's post-traumatic stress disorder was causally linked to the hostile work environment resulting from the supervisor's misconduct. The Board nevertheless rejected appellant's application. In its written decision, the Board determined that in order for a psychological injury to be compensable under civil service regulations, the condition must be work-related and the result of a single traumatic incident. This appeal followed.

## II.

*N.J.S.A.* 11A:6–8 authorizes the Merit System Board to promulgate rules governing leaves of absence due to injury or illness arising from State employment. Pursuant to that power, the Board adopted *N.J.A.C.* 4A:6–1.6 which delineates the requirements for sick leave injury benefits respecting psychological illnesses. That regulation provides in pertinent part as follows:

Psychological or psychiatric illness is not compensable, except when such illness can be traced to a specific work-related accident or occurrence which traumatized the employee thereby causing the illness, and the claim is supported by medical documentation.

Stripped to its essentials, the question presented is whether a systematic, integrated and continuous course of sexual harassment constitutes an "occurrence" under the regulation. Citing the dictionary meaning of "occurrence" as "something that happens or takes place," *Webster's New Collegiate Dictionary* 794 (1975 ed.), appellant argues that a continuous and prolonged course of mistreatment resulting in post-traumatic stress disorder qualifies the worker for sick leave benefits. The Board construes the regulation as barring sick leave benefits except where the psychological illness results from a single traumatizing incident. While the Board is afforded deference when construing its own regulation, we are not bound by its final determination when inconsistent with the regulatory intent. *Krupp v. Bd. of Educ.*, 278 *N.J.Super.* 31, 38–39, 650 *A.*2d 366 (App.Div.1994), *certif. denied,* 140 *N.J.* 277, 658 *A.*2d 301 (1995); *Childs v. Essex County*

*Div. of Welfare,* 236 *N.J.Super.* 127, 143, 564 *A.*2d 889 (Law Div.1988).

In resolving this issue, we recognize that sick leave injury benefits do not come from the same mold of remedial social legislation as do workers' compensation benefits. The workers' compensation statute has historically been considered as "social legislation designed to place the case of work-connected injury on the employer who may readily provide for it as an operating expense." *Morreale v. Civil Service Comm'n,* 166 *N.J.Super.* 536, 539, 400 *A.*2d 126 (App.Div.), *certif. denied,* 81 *N.J.* 275, 405 *A.*2d 819 (1979) (quoting *Hornyak v. Great Atlantic & Pacific Tea Co.,* 63 *N.J.* 99, 101, 305 *A.*2d 65 (1973)). Consequently, we have construed the workers' compensation statute with marked liberality. *Ibid.* In contrast, civil service rules, including the regulation at issue here, have as their objective the promotion of an efficient public service system. *Id.* at 539–40, 400 *A.*2d 126. (citing *Mastrobattista v. Essex County Park Comm'n,* 46 *N.J.* 138, 145–47, 215 *A.*2d 345 (1965); *Park Ridge v. Salimone,* 21 *N.J.* 28, 44, 120 *A.*2d 721 (1956)). The cost of sick leave benefits of public employees falls on the government and is defrayed by the taxpayers. *Ibid.* We thus acknowledge that "[t]his is not a case in which an agency is cutting off a social 'safety net' that the Legislature has mandated." *Matter of Musick,* 143 *N.J.* 206, 218, 670 *A.*2d 11 (1996) (citing *Franklin v. New Jersey Dep't of Human Services,* 111 *N.J.* 1, 20, 543 *A.*2d 1 (1988)).

We do not consider it to be an irrational choice of policies to bar State workers from obtaining sick leave benefits for psychological illnesses except those resulting from a single traumatizing incident. The question remains, however, whether that was the regulatory intent. The regulation could easily have been phrased in terms of precluding sick leave benefits for psychological illnesses except those emanating from a single work-related incident. We believe that by using the words "specific occurrence," rather than "single incident," the Board signaled that the regulation was intended to encompass a broader array of causal events. The

dictionary definition of "occurrence" and the meaning we have traditionally given to the word in other legal contexts indicate that "an occurrence need not be a sudden event, but may be a process...." *Deodato v. Hartford Ins. Co.,* 143 *N.J.Super.* 396, 402, 363 *A.2d* 361 (App.Div.1976). Moreover, our Supreme Court has recognized albeit in a somewhat related context, that "the cumulative effect of a series of discriminatory harassing events [may] represent[ ] a single [and continuing tort] for ... statute of limitations period [purposes]." *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 273, 729 *A.2d* 1006 (1999).

Appellant's claim for sick leave benefits rests on the thesis that her supervisor's misconduct constituted a single occurrence because it was continuous, cumulative and synergistic in nature. Although a different regulation was involved (*N.J.A.C.* 4A:6–1.6(c)(1)), we held in *Matter of Dykas,* 261 *N.J.Super.* 626, 634, 619 *A.2d* 660 (App.Div.1993), that a worker suffering from carpal tunnel syndrome was entitled to sick leave, although the work-related injury was not traceable to a single, discrete accident or event. We reach the same result here. We are satisfied that although the misconduct occurred over a prolonged period of time, it constituted a sufficiently integrated pattern to form, in effect, a single traumatizing event. The evidence presented supports the conclusion that the supervisor's acts of sexual harassment represented a continuum of misbehavior and qualified as a "specific occurrence" under the regulation.

### III.

Because of the Board's disposition of the issue, it left unresolved other questions, such as whether appellant filed her claim in a timely manner. We thus remand the matter to the Board for further proceedings consistent with this opinion.

Reversed and remanded.